## Diederichs v. Jefferson Township.

*Municipal indebtedness—Townships—Bond issue—Taxable value of property—Mining out of coal—Act of April 28, 1915.*

1. Under the Act of April 28, 1915, P. L. 195, a proposed bond issue by a township of the second class will be restrained until further order on a bill alleging that an assessment returned to the office of the county commissioners by the township assessor on Dec. 21, 1922, is the last preceding assessed valuation of the taxable property of the township, though not yet then adjusted by the county commissioners, instead of a statement of the amount of the taxable property assessed and equalized a year earlier, where the proceeding for the bond issue was commenced in January, 1923, and it is alleged in the bill that the assessed valuation of Dec. 21, 1922, was considerably lower than the previous assessment, by reason of the fact that large quantities of coal assessed the previous year had been mined out and were no longer available for taxation, and that, by reason thereof, the bond issue then proposed would constitute an increase of the township's indebtedness to an amount in excess of the legal limit.

2. The purpose of the law is to have the incurring of the proposed indebtedness based upon the assessed value of the taxable property of the township at as near the time when the indebtedness actually is incurred as possible. And when a board of township supervisors, having in mind the floating of a bond issue, wait until after the local assessor actually has made his assessments and has returned them to the county commissioners before instituting their proceeding for the bond issue, it is more in harmony with the intent of the statutory requirement to cause them to wait until the assessed valuations by the local assessor then in course of review by the county commissioners shall have been corrected and adjusted and the final assessed valuation of the taxable property of the township thus finally determined, and then use that as "the last preceding assessed value" and base their bond issue thereon, than to permit them to use an assessed value of a year earlier, especially in the face of an allegation that the assessed value then in the course of completion will be so much lower than that of the previous year as to place the amount of the proposed bond issue within the constitutional restrictions.

3. A contract by a township to assume the State tax on a bond issue creates a definite charge against the township, and is a debt within the meaning of the constitutional restrictions.

*Practice, equity—Rule No. 57—Affidavits—Injunction affidavits.*

4. Equity Rule No. 57, which provides that "all affidavits and depositions shall be taken and expressed in the first person of the deponent, and shall be divided into paragraphs, and each paragraph, as nearly as may be, confined to a distinct portion of the subject," does not apply to injunction affidavits.

Motion to dissolve preliminary injunction. C. P. Fayette Co., in Equity, No. 1110.

*J. K. Spurgeon,* for plaintiff; *E. O. Tabor,* for defendant.

VAN SWEARINGEN, P. J., March 3, 1923.—On bill and affidavits filed, a preliminary injunction was awarded restraining the Supervisors of Jefferson Township, which is a township of the second class, from issuing $108,000 of bonds for road purposes, and the question before the court is whether or not the preliminary injunction shall be dissolved. The point of merit is as to the authority of the township supervisors to issue the bonds under the facts now appearing to the court.

Article IX, section 8, of the Constitution of Pennsylvania provides: "The debt of any county, city, borough, township, school district or other municipality or incorporated district, except as herein provided, shall never exceed 7 per centum upon the assessed value of the taxable property therein, nor shall any such municipality or district incur any new debt or increase its indebtedness to an amount exceeding 2 per centum upon such assessed valuation of property, without the assent of the electors thereof at a public election in such manner as shall be provided by law." And by section 10 of the same article, it is provided: "Any county, township, school district or other

3 D. & C.

municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years."

Section 2 of the Act of April 20, 1874, P. L. 65, as amended by the Act of April 28, 1915, P. L. 195, provides: "That any county, city, borough, school district, township of the second class, or other municipality or incorporated district, may incur debt or increase its indebtedness to an amount in the aggregate not exceeding 2 per centum upon the assessed value of the taxable property therein as fixed and determined by the last preceding assessed value thereof; and the corporate authorities of such municipality may, by a vote thereof, duly recorded upon its minutes, authorize and direct the incurring or the increase of such debt to the amount aforesaid; and may issue coupon bonds or other securities therefor, in sums not less than $100 each, bearing interest at a rate not exceeding 6 per centum per annum, payable semi-annually, and the principal thereof reimbursable at a period not exceeding thirty years from the date at which the same is authorized; and an annual tax, commencing the first year after such debt shall be increased or incurred, sufficient for the payment of the interest thereon and the principal of such debt within a period not exceeding thirty years from the date of such increase, shall be forthwith assessed. Before issuing any such obligation or security, it shall be the duty of the principal officer or officers of such municipality or incorporated district to prepare a statement showing the actual indebtedness of such district, the amount of the last preceding assessed valuation of the taxable property therein, the amount of debt to be incurred, the form, number and date of maturity of the obligations to be issued therefor; and he shall make and append thereto his oath or affirmation of the truth of the facts therein stated, and shall file the said statement in the office of the Clerk of the Court of Quarter Sessions of the proper county."

By the Act of April 23, 1903, P. L. 292, the county commissioners are required to issue their precepts to the assessors on or before the second Monday of September of each year, and the assessors are required to complete the assessments and make their returns thereof not later than Dec. 31st of each year.

In the present case the resolution of the board of township supervisors, for the issuing of the bonds, was adopted on Jan. 5, 1923, and the financial statement of the supervisors was filed in the office of the Clerk of the Court of Quarter Sessions on Jan. 26, 1923. In the financial statement so filed, it is set forth that "the amount of the last preceding assessed valuation of taxable property in said township assessed and equalized for the year 1922 is $5,443,270." It is contended by counsel for the plaintiffs in the bill that the clause of the financial statement quoted is not in compliance with the requirement of the Act of April 28, 1915, P. L. 195, which is that the statement shall set forth "the amount of the last preceding assessed valuation of the taxable property therein," which, it is contended, was the assessment made and returned to the office of the county commissioners by the township assessor on Dec. 21, 1922, the authority conferred by the act upon the township being to incur debt or increase its indebtedness to an amount in the aggregate not exceeding 2 per centum upon "the assessed value of the taxable property therein, as fixed and determined by the last preceding assessed value thereof." In addition to that being the requirement of the statute, the plaintiffs allege in their bill that they are advised and believe that the assessed valuation of the taxable property in the township is now considerably lower than the assessments returned on Dec. 31, 1921, by reason of the fact that large quan-

Diederichs *v.* Jefferson Township.

tities of coal assessed for the year 1922 have been mined out and are not available for taxation in 1923; and allege, upon such information and belief, that the aforesaid increase of indebtedness in the sum of $108,000 constitutes an increase of the indebtedness of the township in excess of 2 per centum of the amount of the last preceding assessed valuation of the taxable property therein.

Counsel for the township supervisors relies on Plains Township's Appeal, 21 Pa. Superior Ct. 68. In that case a large number of judgments had been recovered against the township, some in the Court of Common Pleas, and others before justices of the peace, and the proceeding was relative to requiring the township authorities to levy and collect a special tax to pay the judgments. The aggregate amount of the judgments was $63,621.68. The assessed valuation of the taxable property of the township last preceding the decree of the lower court, as fixed and returned by the assessor to the county commissioners, was $4,193,521, but after this assessment had been revised, equalized and corrected by the county commissioners, sitting as a board of revision, the total assessed value of the taxable property in the township was $1,050,124. The court below decreed that the tax should be levied and collected upon the assessments as returned by the assessor, and not as corrected by the board of revision. The Superior Court held that the levy must be based upon the assessed valuation as revised and equalized by the county commissioners, basing its decision, to some extent at least, on the Act of April 15, 1834, § 27, P. L. 509, 516, which provides: "In every case in which a rate or assessment shall be laid for township purposes, the same shall be levied upon the basis of the last adjusted valuation made as aforesaid for the purpose of regulating county rates and levies." Some weight may be added to the contention of counsel for the supervisors by the closing words of the opinion in Valley Township *v.* Coatesville Borough, 51 Pa. Superior Ct. 186, although the syllabus indicates that no assessments then had been made and returned by the local assessor.

The Act of April 28, 1915, P. L. 195, does not authorize a township of the second class to incur debt or increase its indebtedness to an amount in the aggregate not exceeding 2 per centum upon the *adjusted* assessed value of the taxable property therein, as fixed and determined by the last preceding assessed value thereof, but "to an amount in the aggregate not exceeding 2 per centum upon the assessed value of the taxable property therein, as fixed and determined by the last preceding assessed value thereof." The word "adjusted" nowhere appears in the act. The purpose of the law, we believe, is to have the incurring of the proposed indebtedness based upon the assessed value of the taxable property of the township at as near the time when the indebtedness actually is incurred as possible. In the present case the last preceding assessed value of the taxable property in the township, prior to the institution of the proceeding for this bond issue, was the assessment made and returned by the township assessor to the county commissioners on Dec. 21, 1922, although at the time of the institution of the proceeding, which was on Jan. 5, 1923, the assessments had not been revised and equalized by the county commissioners, and we are not convinced that the setting forth by the township supervisors in their financial statement of "the amount of the last preceding assessed valuation of taxable property in the township as assessed and equalized for the year 1922," was a proper compliance with the statutory requirement and authorized the township supervisors to proceed with their proposed bond issue. It seems a little peculiar that the proceeding to issue these bonds was instituted within the limited space

3 D. & C.

Diederichs v. Jefferson Township.

of time intervening between the return of the assessments by the township assessor to the county commissioners and the correction and equalization thereof by the county commissioners sitting as a board of revision. And, further than that, the time for hearing and disposing of all appeals to the county commissioners from the assessments by the local assessors all over the county now has expired and all assessments have been adjusted, and there no longer is any reason why the Supervisors of Jefferson Township cannot ascertain the revised and equalized assessments of the township and the total assessed value of the taxable property therein. The listing of the property owners and of their respective taxable properties, together with the designation of their respective values by the local assessor, constitutes primarily the actual assessed valuation of the property in the township for purposes of taxation. The great majority of these assessed values never are changed, but remain as originally fixed by the local assessor, although a limited number of them may be changed by the county commissioners on appeal. The return of the local assessor is in reality the assessment of the township, to be reviewed and revised in detail by the county commissioners, and then to constitute the official assessed value of the taxable property in the district. And when a board of township supervisors, having in mind the floating of a bond issue, wait until after the local assessor actually has made his assessments and has returned them to the county commissioners before instituting their proceeding for the bond issue, it is more in harmony with the intent of the statutory requirement to cause them to wait until the assessed valuations by the local assessor, then in course of review by the county commissioners, shall have been corrected and adjusted and the final assessed value of the taxable property in the township thus finally determined, and then use that as "the last preceding assessed value" and base their bond issue thereon, than to permit them to use an assessed value of a year earlier, especially in the face of an allegation that the assessed value then in the course of completion will be so much lower than that of the previous year as to place the amount of the proposed bond issue within the constitutional restriction.

It is urged by counsel for the supervisors that the preliminary injunction must be dissolved, for the reason that the injunction affidavits are not in the first person and are not divided into paragraphs, citing Equity Rule No. 57, which provides: "All affidavits and depositions shall be taken and expressed in the first person of the deponent, and shall be divided into paragraphs, and each paragraph, as nearly as may be, confined to a distinct portion of the subject." If this rule is intended to include injunction affidavits, then the preliminary injunction should be dissolved. But we are not persuaded that such is the intention of the rule. The rule is placed under the general head of "Evidence," and while injunction affidavits may be considered as evidence in a way, yet Rule No. 81, under the general head of "Injunctions," refers to injunction affidavits in the opening sentence, where it is said that "preliminary injunctions may be granted, in accordance with the present practice, on bill and injunction affidavits," but nothing is said there to indicate that injunction affidavits are intended to be included in the requirements of Rule No. 57. In Rule No. 81, it is said further, "but upon the hearing, at the end of five days, or such other time as may be fixed, the evidence must be taken subject to cross-examination, and ex parte affidavits will not be received." So the only extent to which injunction affidavits may be considered as evidence is as supporting the allegations of the bill until a hearing can be had. It never has been the practice in this county to require injunction affidavits to come within the requirements of Equity Rule No. 57, and the question never

has been raised before in this court, although we have given consideration heretofore to the essentials of injunction affidavits in other respects: Thompson v. South Union Twp. School Directors, 17 Dist. R. 816.

There is another question that presents itself to the court, although it has not been raised by counsel, and that is whether or not the State tax on the proposed bonds, which the township agrees to pay, does not constitute an indebtedness incurred in connection with the proposed bond issue. If it does, and if nothing else is to be considered than the facts presented here, then this proposed bond issue will incur an indebtedness to an amount exceeding 2 per centum upon the assessed value of the taxable property of the township even on the township supervisors' own showing. The State tax on $108,000 of bonds, calculated on the basis of four mills, is $432 per year, and in twenty years, the length of time the bonds are to run, will amount to $8640, which, with the face amount of the bonds, will aggregate $116,640; while 2 per centum upon the assessed value of the taxable property of the township, on the basis of a valuation of $5,443,270, amounts to but $108,865.40. It was held in Campbell v. Wilkins Township, 273 Pa. 204, that a contract by a township to assume the State tax on a bond issue creates a definite charge against the township, and is a debt within the meaning of the constitutional restriction. We do not base our decision on this matter, because it has not been presented or argued by counsel, but, inasmuch as we shall continue the preliminary injunction anyhow, it may be well for the township supervisors and their counsel to take the matter into consideration in future proceedings, if there be any.

And now, March 3, 1923, the motion to dissolve the preliminary injunction heretofore granted is overruled and dismissed, and the preliminary injunction is continued until further order of the court.

From Luke H. Frasher, Uniontown, Pa.